CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

December 23, 2024
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TIMOTHY WAYNE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:24-cv-00293 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SUPERINTENDENT CLAY | ) | By:   Hon. Thomas T. Cullen |
| CORBIN *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

This matter is before the court on (i) Defendants' motion to dismiss[1] (ECF No. 5), (ii) Plaintiff Timothy Wayne Smith's ("Plaintiff") motion for emergency restraining order and temporary injunction (ECF No. 18), (iii) Plaintiff's motion to amend his complaint (ECF No. 19), (iv) Plaintiff's motion to appoint counsel (ECF No. 28), and (v) Plaintiff's motion for emergency protective restraining order (ECF No. 29). For the following reasons, the Court will grant Plaintiff's motion to amend, deny Plaintiff's remaining motions, and deny Defendants' motion to dismiss as moot.

## I.

Plaintiff Timothy Wayne Smith, proceeding *pro se*, filed a civil-rights action asserting claims under 42 U.S.C. § 1983 in the Frederick County Circuit Court against Defendants Superintendent Clay Corbin, Director of Nursing Allena Kovak, Captain Heath Custer, and Nurse Christopher Robinson. (*See generally* Compl. [ECF No. 1-1].) On May 2, 2024,

---

[1] Defendants Superintendent Clay Corbin, Captain H. Custer, A. Kovak, and Christopher Robinson (collectively "Defendants") jointly filed the motion to dismiss.

Defendants jointly removed the action to this Court. (*See* Notice of Removal [ECF No. 1].) Thereafter, Defendants filed a motion to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). (*See* Defs.' Mot. to Dismiss [ECF No. 5].)

The Court issued a notice ordering Plaintiff to respond to Defendants' motion within 21 days and cautioned him that his failure to respond within the 21-day period could result in dismissal of this action for failure to prosecute. (*See Roseboro* Notice [ECF No 8].) The notice was returned to the Court as undeliverable. (*See* Returned Mail [ECF No. 12].) Six weeks after the Court issued its notice, Plaintiff notified the Court of his new address and sought an extension of time to respond to Defendants' motion to dismiss, explaining that his recent reincarceration and health issues had delayed his receipt of Defendants' motion. (*See* Mot. for Extension of Time [ECF No. 15].) The Court granted Plaintiff's motion for extension and ordered Plaintiff to "file any opposition to the motion to dismiss . . . no later than July 17, 2024." (Oral Order, June 17, 2024 [ECF No. 16].)

Plaintiff did not file a response to the motion to dismiss by July 17, 2024, but on July 15, 2024, Plaintiff filed a motion "for emergency restraining order and temporary injunction" seeking preliminary injunctive relief. (*See* Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. [ECF No. 18]; Br. in Supp. of Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. [ECF No. 18-1].) That same day, Plaintiff filed a "motion to amend" his complaint, which did not include a proposed amended complaint. (Pl.'s Mot. to Am. [ECF No. 19].) A few days later, Plaintiff filed a document which he titled:

Plaintiff's Memorandum in Support
Plaintiff's Amended Complaint

(*See* Pl.'s Memo. in Supp. [ECF No. 20].) The substance of the filing reveals that it is not an amended complaint but rather a response to arguments raised in Defendants' motion to dismiss. (*See id.*)

Defendants timely opposed Plaintiff's motion for injunctive relief and his motion to amend his complaint and timely replied in support of their motion to dismiss. (*See* Defs.' Resp. in Opp'n to Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. [ECF No. 21]; Defs.' Resp. in Opp'n to Pl.'s Mot. to Am. [ECF No. 22]; Defs.' Reply in Supp. of Mot. to Dismiss [ECF No. 23].) Plaintiff then replied in support of his motions for injunctive relief and to amend. (*See* Reply in Supp. of Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. [ECF No. 26]; Reply in Supp. of Pl.'s Mot to Am. [ECF No. 27].) And Plaintiff has since moved for appointment of counsel (*see* Pl.'s Mot. to Appoint Counsel [ECF No. 28]) and again requested an emergency restraining order (*see* Pl.'s Mot. for Emergency Protective Restraining Order [ECF No. 29]). Each of these motions is now ripe for the Court's review.

## II.

### A. PLAINTIFF'S MOTION TO AMEND

Plaintiff's original complaint asserts claims for violations of the Eighth and Fourteenth Amendments by Defendants stemming from medical treatment rendered to Plaintiff by Defendant Christopher Robinson and the alleged failure of other Defendants to adequately supervise or investigate Robinson's actions. (*See* Compl. 1–23.) Plaintiff's motion to amend primarily concerns his claims against Defendants Corbin, Kovak, and Custer, clarifying his theories of liability against them and alluding to retaliatory actions Defendants have taken toward him since the events described in his complaint. (*See* Pl.'s Mot. to Am. 1–5.)

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. Under that rule, a party may amend its pleading once "as a matter of course" within 21 days of service of the original pleading or 21 days of service of a responsible pleading or Rule 12 motion. *See* Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 instructs courts to "freely give leave when justice so requires." *Id.* It is therefore the policy in this Circuit to "liberally allow amendment" and, when possible, to "resolv[e] cases on the merits, instead of on technicalities." *U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) (citations omitted).

Defendants oppose Plaintiff's motion to amend on the basis that he failed to file a proposed amended complaint with his motion to amend. (Defs.' Resp. in Opp'n to Pl.'s Mot. to Am. 1–2.) They argue the Court should deny Plaintiff's motion because, without a proposed amended complaint, the Court cannot assess the propriety of Plaintiff's proposed amendment—*e.g.*, whether amendment would be futile. (*See id.*) Defendants are generally correct that leave to amend should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 217–18 (4th Cir. 2019). But Defendants are incorrect that the failure to attach a proposed amended complaint—particularly by a plaintiff acting *pro se*—is *per se* fatal to a motion to amend. *See, e.g.*, *C.L. v. Wilson*, No. CV 1:19-00792, 2020 WL 5734067, at *1 (S.D.W. Va. Sept. 24, 2020) (granting leave to amend despite the plaintiff's failure to attach a proposed amended complaint to her motion); *Peltier v. Mathis*, No. 1:15CV133, 2015 WL 13831990, at *2 (W.D.N.C. Dec. 4,

2015) (rejecting argument that leave to amend was improper because the plaintiff did not attach a proposed amended complaint to his motion to amend and collecting cases holding similarly).

Here, particularly in light of Plaintiff's *pro se* status, the Court finds it is in the interests of justice to permit Plaintiff to file an amended complaint. Nothing in the Federal Rules or the Local Rules of this Court mandates the attachment of a proposed amended complaint to a motion to amend. *Cf. Peltier*, 2015 WL 13831990, at *2 ("Irrespective of whether other Courts in this District have imposed such a rule, this Court will not impose a strict requirement that every party seeking leave to amend attach the proposed amendment to the motion. While doing so might be in the best interest of the party seeking leave to amend, it is not a rigid, legal requirement that would prohibit the Court from granting a party leave to amend under Rule 15."). Rather, the Court will heed Rule 15's liberal amendment policy and will seek to resolve this case on its merits, if possible.[2] *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Smithfield Foods Inc. v. United Food & Com. Workers Int'l Union*, 254 F.R.D. 274, 280 (E.D. Va. 2008) ("[E]ven where the possibility of relief is remote, leave to amend is to be permitted because it is the possibility of recovery, and not its likelihood, that guides this Court's analysis.").[3] Accordingly, the Court

---

[2] To be clear, the court will not hesitate to dismiss this case on procedural grounds if necessary and proper.

[3] Moreover, Defendants will not be prejudiced by allowing Plaintiff leave to amend, despite his failure to file a proposed amended complaint with his motion, because any arguments relating to futility of amendment may properly be raised in a Rule 12 motion after the amended complaint is filed.

will grant Plaintiff's motion to amend his complaint, and Plaintiff will be given 30 days from the date of this Opinion to file an amended complaint.[4]

## B. DEFENDANTS' MOTION TO DISMISS

Because Defendants' motion to dismiss is aimed at dismissing Plaintiff's original complaint, that motion will be denied as moot in light of the Court's decision to grant Plaintiff's motion to amend. *See Tolley v. Wells Fargo Bank, N.A.*, No. 6:19-CV-00062, 2019 WL 7041514, at *2 (W.D. Va. Dec. 20, 2019) (collecting cases in which courts denied motions to dismiss previous versions of complaints as moot). Defendants are free to renew any applicable arguments from their motion to dismiss after Plaintiff files his amended complaint.

## C. PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF

In Plaintiff's first motion seeking injunctive relief,[5] Plaintiff claims he is under "duress" from Defendants since he was reincarcerated at Northwestern Regional Adult Detention Center ("NRADC"), where the events described in his complaint occurred. (Br. in Supp. of Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. 1–3.) He further claims he is "under attack by the Powers that run [that] facility, from the top – down," and that the administration at NRADC was "not happy" about his return to the facility. (*Id.* at 2.) He also claims that, since he filed this action, he was wrongfully charged for a failed drug screen—and

---

[4] Plaintiff is nevertheless advised that, to the extent he plans to add claims against Defendants Corbin, Kovak, and Custer based on the theory of *respondeat superior* (*see* Pl.'s Mot. to Am. 4), "there is no *respondeat superior* liability under § 1983." *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

[5] Based on its title, Plaintiff's motion could be construed as seeking a temporary restraining order ("TRO") or a preliminary injunction. (*See* Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. 1.) A TRO, however, merely preserves the status quo until the Court can issue a ruling on a party's request for preliminary injunction. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). A preliminary injunction, by contrast, "preserves the status quo pending a final trial on the merits." *Id.* Because Plaintiff's motion appears to request injunctive relief through trial—and because Defendants have had the opportunity to respond to the motion—the Court construes it as one for preliminary injunction rather than TRO.

faced segregation as a result—and has been told that no one at the jail will perform notary services for him. (*Id.* at 3; *see also* Pl.'s Reply in Supp. of Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. 4–5 (claiming "Superintendent Corbin and or Captain Custer directed their subordinates to subject [Plaintiff] to a false urine screen" and that Plaintiff was given 10 days in isolation for his positive drug test).) Plaintiff asserts that his lack of notary access and alleged false drug screen are "threats" by Defendants and that "Defendants['] 'actions' and tactics are going to get worse" if the Court does not intervene. (Reply in Supp. of Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. 11–12.)

Additionally, Plaintiff represents that Defendant Robinson has been "in [his] presence" four times since Plaintiff's return to NRADC but admits that "to this point . . . nothing has happened." (Br. in Supp. of Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. 2.) Plaintiff nevertheless claims that Robinson "comes across as menacing" during their interactions and, on one occasion, "threw his glasses across a table," "stood up and faced [him] in a threat[en]ing manner," and "told [him] his granddaughter was more of a man than [Plaintiff is]." (Pl.'s Reply in Supp. of Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. 1–2.) And in his reply brief, Plaintiff states he has chosen to refuse medication dispensed to him by Robinson because he "honestly feel[s] defendant Robinson is a direct threat to [his] safety and [his] liberty." (*Id.* at 3–4.)

Federal Rule of Civil Procedure 65 permits district courts to issue temporary restraining orders and preliminary injunctions. "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations and internal quotation marks omitted). To obtain preliminary injunctive relief, Plaintiff must

show that: (1) he is "likely to succeed on the merits" of his claims; (2) he is "likely to suffer irreparable harm absent preliminary relief"; (3) "the balance of the equities favors relief"; and (4) "the relief is in the public interest." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (citing *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 170–71 (4th Cir. 2019)). "[E]*ach* of these four factors must be satisfied to obtain preliminary injunctive relief." *Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018) (emphasis in original) (explaining it is "unnecessary to address all four factors when one or more had not been satisfied").

As a preliminary matter, Plaintiff's motion does not specify the particular injunctive relief he seeks. (*See* Br. in Supp. of Pl.'s Mot. for Emergency Restraining Order and Temporary Inj. 1–3.) And in Plaintiff's complaint, he asks only for (1) $777,000.00 in compensatory damages, (2) an apology, (3) a one-month "suspension," and (4) $25,000.00 in punitive damages. (Compl. 69–71.) To the extent Plaintiff asks the Court to order a pre-resolution apology or suspend Robinson, or any other Defendant, he is not entitled to such relief. Such requests amount to requests for mandatory injunctions, which alter—rather than preserve— the status quo. *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (defining the status quo as "the last uncontested status between the parties which preceded the controversy"). "Mandatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." *Teradata US, Inc. v. Cerulium Corp.*, No. CV 3:24-2878-MGL, 2024 WL 4818238, at *2 (D.S.C. May 31, 2024) (quoting *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994)). "Accordingly, the Supreme Court and the Fourth Circuit have imposed a heightened standard for mandatory preliminary

injunctive relief such that it is only available when 'the applicants' right to relief [is] indisputably clear.'" *Cooke v. Lancelotta*, No. CV SAG-22-297, 2022 WL 622229, at *3 (D. Md. Mar. 3, 2022) (quoting *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019)). Plaintiff has not made such a showing here.

Plaintiff's first motion also fails because he has not demonstrated that he faces irreparable harm if he is not granted injunctive relief.

To warrant a preliminary injunction, Plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. V. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). A plaintiff's non-specific assertion that the defendants have threatened him are not enough to justify injunctive relief. *See Jackson v. Robinson*, No. 7:24-CV-00147, 2024 WL 3331673, at *2 (W.D. Va. July 8, 2024) (finding that an inmate's "vague allegation of threats" was not a sufficient basis to "justify court interference in matters of prison administration"); *Price v. Hubbard*, No. 7:24-CV-00495, 2024 WL 5053110, at *4 (W.D. Va. Dec. 10, 2024) (holding that the claim that defendant had overtly "threatened to assault" plaintiff and "write more false charges" was too vague to warrant a preliminary injunction); *see also Albritton v. Anderson*, No. 7:22CV00306, 2023 WL 8810809, at *1 (W.D. Va. Dec. 19, 2023) (describing allegation that plaintiff is "constantly being threatened and retaliated against with false charges" as "vague, lacking any details regarding who has threatened him, when, where, or with what charges").

Here, Plaintiff has not even alleged any threats made by Defendants. Instead, Plaintiff's assertion of irreparable harm is based only on his own suspicions that Defendants are responsible for his failed drug screen, his generalized mistrust of Defendants, and his

speculation about what Defendants may do in the future. This is not enough to warrant an injunction, especially under the heightened standard for mandatory injunctive relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). Accordingly, the Court must deny his motion for injunctive relief.

Plaintiff's second motion for injunctive relief also fails to demonstrate irreparable harm. In that motion, Plaintiff asks for an "emergency protective restraining order" on the grounds that Defendant Robinson has been made "a dual employee nurse/corrections office" and "is using his position to refuse [Plaintiff] [his] medications and to intimidate [him]." (Pl.'s Mot. for Emergency Protective Restraining Order 1.) Plaintiff further reports that Robinson has tried to "provoke" him by "continuously coming into" his housing unit. (*Id.* (noting Robinson entered his housing unit three times on November 15, 2024).) But he again fails to establish that any harm is likely and not merely speculative. If anything, the fact that Robinson has allegedly been in Plaintiff's presence several times without harming him suggests that the parties are able to coexist peacefully while this litigation proceeds.

And while an allegation that medical personnel have refused to dispense mediation certainly has the court's attention, Plaintiff's general statement concerning Robinson's refusal of Plaintiff's medications—particularly in light of lack of detail about the circumstances surrounding and risks associated with not taking the unidentified medications and his earlier representation that Plaintiff himself made the choice not to take any medications distributed by Robinson—is not enough to support the extraordinary remedy of a preliminary injunction.

Because Plaintiff has still not shown that he is likely to suffer actual and imminent irreparable harm, the Court will deny his second motion for injunctive relief.

### D. PLAINTIFF'S MOTION TO APPOINT COUNSEL

Finally, the Court will also deny Plaintiff's motion to appoint counsel (ECF No. 28). In his motion, Plaintiff requests counsel on the grounds that he is "a pro se litigant who is <u>not</u> trained in the esoteric language of law" and that "it would serve the public[']s interest." (*Id.* at 1–2.) Plaintiff also asserts that this is an exceptional case because it was removed from state court to federal court by Defendants. (*Id.* at 2.)

As Plaintiff correctly notes in his motion, a litigant in a civil case does not have a constitutional or statutory right to counsel, and the Court cannot require an attorney to represent an indigent plaintiff. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989); *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Although the Court has the discretion to request an attorney to represent an indigent plaintiff, it may do so only when exceptional circumstances are present. *See Cook*, 518 F.2d at 780 (noting that the appointment of counsel in civil actions "should be allowed only in exceptional cases"). To determine whether a case presents exceptional circumstances, courts conduct a two-part inquiry. *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. July 31, 2024). "That inquiry requires the court to determine (1) whether the plaintiff 'has a colorable claim' and (2) considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff 'lacks the capacity to present it.'" *Id.* (quoting *Whisenant v. Yuam*, 739 F.2d 160, 162 (4th Cir. 1984)).

Having considered the relevant factors, the Court concludes that Plaintiff circumstances are not sufficiently exceptional to justify the appointment of counsel at this

stage of the proceedings. Even assuming Plaintiff has colorable claims for relief, his claims are not so complex as to require the assistance of counsel, and his filings indicate that he is capable of adequately presenting his factual and legal arguments. Moreover, Plaintiff has not identified any circumstances that would require the appointment of counsel at this particular stage of the proceedings. *See Jenkins*, 109 F.4th at 249 ("[Legal] inexperience and incarceration alone do not warrant appointment of counsel"); *see also El-Bey v. N. Carolina Dep't of Pub. Safety*, No. 5:21-CV-00084-MR, 2022 WL 584665, at *2 (W.D.N.C. Feb. 25, 2022) (finding no exceptional circumstances justifying the appointment of counsel to indigent, incarcerated plaintiff despite removal from state court); *Bradley v. R.J. Reynolds, Inc.*, No. 8:15-CV-2196-T-23MAP, 2015 WL 12838171, at *1 (M.D. Fla. Oct. 27, 2015) (same). Accordingly, Plaintiff's motion to appoint counsel will be denied without prejudice. If any exceptional circumstances arise in the future that would justify appointment of counsel, Plaintiff may renew his request.

## III.

For the foregoing reasons, Plaintiff's motion to amend (ECF No. 19) will be granted, Defendants' motion to dismiss (ECF No. 5) will be denied as moot, and Plaintiff's motions to appoint counsel (ECF No. 28) and for restraining order and/or injunctive relief (ECF Nos. 18, 29) will be denied.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 23rd day of December, 2024.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE